UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DISABILITY RIGHTS NEW YORK,

                        Plaintiff,

v.                                                1:21-CV-0739

NEW YORK STATE DEP'T OF CORR. AND    (GTS/CFH)
CMTY. SUPERVISION; and ANTHONY J.
ANNUCCI, in his official capacity as the Acting
Comm'r of the New York State Dep't of Corr.
and Cmty. Supervision,

                        Defendants.
_____

APPEARANCES:                            OF COUNSEL:

DISABILITY RIGHTS NEW YORK          BRANDY L. L. TOMLINSON, ESQ.
  Counsel for Plaintiff                       CHRISTINA ASBEE, ESQ.
44 Exchange Boulevard, Suite 110         ALYSSA GALEA, ESQ.
Rochester, New York 14614

HON. LETITIA A. JAMES                 SHANNAN C. KRASNOKUTSKI, ESQ.
Attorney General for the State of New York   HELENA O. PEDERSON, ESQ.
  Counsel for Defendants                 Assistant Attorneys General
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this civil rights action filed by Disability Rights New York

("Plaintiff" or "DRNY") against the New York State Department of Corrections and Community

Supervision ("DOCCS") and its Acting Commissioner, Anthony Annucci (collectively,

"Defendants"), is Plaintiff's motion for an order of contempt or, alternatively, for an order

1

amending the Court's prior preliminary injunction. (Dkt. No. 39.) For the reasons set forth below, Plaintiff's motion is denied.

I.     **RELEVANT BACKGROUND**

Generally, in its motion, Plaintiff requests alternative forms of relief. (Dkt. No. 39, Attach. 1 [Plf.'s Memo. of Law].) As a threshold matter, Plaintiff requests that the Court issue an order holding Defendants in civil contempt of the Court's preliminary injunction of February 17, 2022,[1] by wrongfully redacting, from the Office of Special Investigations (or "OSI") records that Defendants were ordered to produce, the names and Department Identification Numbers (or "DINs") of two non-clients of Plaintiff who served as confidential witnesses to the suspected abuse of Incarcerated Individual C. (*Id*. at 5-15 [attaching pages "1" through "11" of Plf.'s Memo. of Law].) In the alternative, Plaintiff requests that the Court amend its preliminary injunction to expressly state that the P&A Acts entitle DRNY to the unredacted records in question, because doing so is (a) necessary to preserve the status quo, and (b) consistent with the Court's decision in *Disability Rights New York v. Wise*, 171 F. Supp. 3d 54, 57-62 (N.D.N.Y. 2016) (Sharpe, J.) (holding that DRNY was authorized to review complete, unredacted records prepared by New York State Justice Center, including "the identities of . . . witnesses . . . involved in allegations of abuse"). (*Id*. at 16-17 [attaching pages "12" and "13" of Plf.'s Memo.

---

[1]     In pertinent part, the Court's prior preliminary injunction enjoined Defendants from "denying Plaintiff access to all of the above-described requested records for . . . Incarcerated Individual C, in their possession," including "Office of Special Investigations (OSI) records, original complaints, OSI response, and reports of investigations related to complaints submitted between December 1, 2019 through the date of production] in accordance with Plaintiff's federally mandated P&A authority." *Disability Rights New York v. N.Y.S. Dep't of Corr. and Cmty. Supervision*, 21-CV-0739, 2022 WL 484368, at *10, 13 (N.D.N.Y. Feb. 17, 2022) (Suddaby, C.J.).

of Law].)

## II. GOVERNING LEGAL STANDARDS

### A. Request for an Order of Civil Contempt

"A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989).

### B. Request to Amend a Preliminary Injunction

A preliminary injunction "is an equitable remedy . . . issued to maintain the status quo until there can be a hearing on the merits." *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir.1984) (italics omitted). It is also "an ambulatory remedy that marches along according to the nature of the proceeding." *Sierra Club*, 732 F.2d at 256. In this sense, "[i]t is executory and subject to adaption as events may shape the need . . . ." *Id*. "Thus, the nature and effect of the decree granting an injunction must be examined first when considering its modification." *Id*. More specifically, "[w]hen modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Id*. "The test of that discretion is measured by whether the requested [modification] effectuates or thwarts the purpose behind the injunction." *Id.* at 257. As a result, on a motion to amend a preliminary injunction, it is appropriate to consider such factors as whether the movant would suffer irreparable harm in the absence of the amended preliminary injunction. *See, e.g., Advanced Access Content Sys. Licensing Admin., LLC v. Feng Tao*, 689 F.

App'x 661, 661-62 (2d Cir. 2017) ("The District Court acted within its discretion in finding that AACS LA would suffer irreparable harm absent the amended preliminary injunction.").

### III. ANALYSIS

#### A. Plaintiff's Request for an Order of Civil Contempt

After carefully considering the matter, the Court finds that Plaintiff has not met the three-part standard governing its request for each of the three reasons stated by Defendants in their opposition papers: (1) the preliminary injunction is not clear and unambiguous, because (a) the decretal paragraph of the preliminary injunction omits any discussion of which records constitute the "above-described" records, and (b) the body of the preliminary injunction contains no analysis of OSI records or the information of non-client third-partes (and no relevant discussion of the redaction of that information); (2) in any event, Defendants' noncompliance is not clear and convincing, because (a) Defendants were facing an issue of first impression when they redacted the information, (b) they acted in accordance with their accompanying obligation to keep the information confidential and keep the witnesses in question secure from retaliation, and (c) even though DOCCS has "control" over where Plaintiff interviews witnesses, DOCCS facility employees scheduling witness interviews are not aware that the inmates interviewed are OSI witnesses (given those employees' lack of clearance to view OSI documents), and Plaintiff provided no indication of what safeguards it would request for such interviews; and (3) in any event, Defendants have diligently attempted in a reasonable manner to comply with the preliminary injunction, because (a) Defendants produced all of the OSI records except for these two redacted portions, and (b) Defendants have promptly responded each time Plaintiff has taken issue with their production of OSI records.  (Dkt. No. 40, at 4-12 [attaching pages "1" through

"9" of Defs.' Opp'n Memo. of Law].)  To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, those reasons).

With regard to the first reason (i.e., that the injunction was not clear and unambiguous), the Court acknowledges that portions of the parties' prior motion papers and the Court's preliminary injunction of February 17, 2022, referenced "Office of Special Investigations (OSI) records, original complaints, OSI response, and reports of investigations related to complaints submitted between December 1, 2019 through date of production." (Dkt. No. 6, Attach. 8, at 20 [attaching DRNY Records Request of Jan. 11, 2021]; Dkt. No. 17, at 11 [attaching page "9" of Defs.' Opp'n Memo. of Law].)  *See also Disability Rights New York v. N.Y.S. Dep't of Corr. and Cmty. Supervision*, 21-CV-0739, 2022 WL 484368, at *10 (N.D.N.Y. Feb. 17, 2022) (Suddaby, C.J.).  However, the motion papers and Decision and Order made no mention of "witnesses," "third-parties," or even "interviews." (*See generally* Dkt. No. 6, Attach. 2 [Plf.'s Memo. of Law]; Dkt. No. 17 [Defs.' Opp'n Memo. of Law]; Dkt. No. 21 [Plf.'s Reply Memo. of Law].)  *See also Disability Rights New York*, 2022 WL 484368.  As a result, it did not clearly and unambiguously require the production of the information in question.

With regard to the second and third reasons (i.e., that DOCCS' noncompliance was not clear and convincing, and that DOCCS diligently attempted in a reasonable manner to comply), the Court finds that DOCCS' noncompliance was not clear and convincing, and indeed was diligent and reasonable.  This is because, after the parties narrowed their dispute through the discourse of motion practice, Plaintiff conspicuously failed to offer a solution to the problem standing in the way of the disclosure of the discrete information at issue.

More specifically, its pre-motion letter-brief, Plaintiff argued that DOCCS has no

legitimate reason to be concerned about disclosing the confidential information in question to Plaintiff, because "Plaintiff is obligated to keep information that is subject to confidentiality laws or requirements confidential even after receiving them from a source." (Dkt. No. 33, at 2 [Plf.'s Pre-Motion Letter-Brief] [internal quotation marks omitted].) In its pre-motion response, Defendants conceded that point but explained that any such interviews of witnesses that Plaintiff conducts "would occur in public areas of correctional facilities, such as visiting rooms," which would both put the witnesses "at risk" of retaliation and subject DOCCS to potentially liability for any harm. (Dkt. No. 35, at 4 [Defs.' Pre-Motion Letter-Brief].)

Undeterred from filing its motion, in its memorandum of law-in chief, Plaintiff agreed that "interviewing witnesses in public areas is [not] the . . . desire of DRNY and its staff" but argued that "the responsibility to provide a secure and safe space lies solely with DOCCS" because "DOCCS controls the areas within a correctional facility where DRNY is able to meet with clients . . . [and] interview witnesses . . . ." (Dkt. No. 39, Attach. 1, at 13 [attaching page "9" of Plf.'s Memo. of Law].) In its opposition memorandum of law, Defendants responded by explaining that, because "facility employees do not have clearance to view OSI documentation, . . . a facility employee scheduling a witness meeting would have no awareness of any security concerns that could be posed to a particular witness based upon previously-released OSI information," and Plaintiff has demanded the information from DOCCS "with no advance accounting of how the information provided will be used." (Dkt. No. 40, at 11 [attaching page "8" Defs.' Opp'n Memo. of Law].)[2] However, instead of providing any such accounting or

---

[2] (*See also* Dkt. No. 40, Attach. 1, at ¶¶ 9-10 [Mousseau Decl., stating, "Facility records staff do not have authorization to view or access OSI records, regardless of whether such records pertain to open or closed OSI investigations. . . . OSI documents, and especially personal

suggesting a procedure that would alleviate the security and liability issues presented to DOCCS, Plaintiff (1) questioned the sincerity of DOCCS' concerns (arguing that its "position is inconsistent with DOCCS' long-standing practice of providing copies of unredacted OSI records to DRNY . . ."),[3] (2) characterized any such interviews as hypothetical (arguing that "DRNY has not made a request to interview witnesses related to the investigative records of C"), and (3) nonetheless insisted it had the right to conduct whatever interviews it wanted (arguing that "[n]onetheless, the law is clear, DRNY may seek to interview any witness to conduct its investigation"). (Dkt. No. 41, at 4-5 [attaching pages "3" and "4" of Plf.'s Reply Memo. of Law.)

In other words, Plaintiff disregarded the issue and acted unreasonably.[4]  Plaintiff is respectfully reminded that it is not the only party in this action that is tasked with an important mission.  DOCCS must protect society from 48,000 convicted felons while doing its best to

---

identifying information within such documents, are maintained with particular secrecy by OSI employees. DOCCS does not provide unrestricted access to OSI documents at its facilities, or at any location."].)

[3]     Plaintiff cites no admissible record evidence in support of this argument. (Dkt. No. 41, at 4, n.1 [attaching page "3" of Plf.'s Reply Memo. of Law].)  At most, the Court is left with the conclusion that, if in the past DOCCS has indeed provided unredacted copies of OSI records to Plaintiff, then either (1) those copies did not include information identifying non-client witnesses or (2) the disclosure was unintentional.

[4]     The Court notes that Plaintiff's choice of insisting on its right "to interview any witness" instead of cooperating with OSI only confirms DOCCS' suspicion that, if DOCCS were to disclose the identities of the non-client witnesses to Plaintiff, and Plaintiff were to then become frustrated by the pace at which OSI were to arrange a confidential interview with the non-client witnesses in a non-public location in a facility, Plaintiff might very well simply call the DOCCs facility and tell a DOCCS employee – who lacks OSI clearance – that it *needs* to interview the inmate in a non-public location, thus recklessly risking the disclosure of the inmate's status as an OSI witness.

protect them from each other (with limited resources). *See Disability Rights New York v. N.Y.S. Dep't of Corr. and Cmty. Supervision*, 18-CV-0980, 2020 WL 6484049, at *9 & n.6 (N.D.N.Y. Nov. 4, 2020) (Suddaby, C.J.) (citing record evidence).

Simply stated, Plaintiff has not shown that it deserves an order of civil contempt.

### B. Plaintiff's Request to Amend the Court's Preliminary Injunction

After carefully considering the matter, the Court finds that Plaintiff has not met the standard governing this alternative request for each of the two reasons stated by Defendants in their opposition papers: (1) the requested amendment would not preserve the status quo, because treating OSI records simply as ordinary DOCCS records would (a) impose significant new obligations on DOCCS, and (b) significantly chill the willingness of third-party witnesses to cooperate with OSI investigations (which would further the goals neither of DOCCS nor Plaintiff); and (2) *Wise* is not controlling and in any event is factually distinguishable from the current action (addressing residents in group homes, not inmates in correctional facilities). (Dkt. No. 40, at 12-14 [attaching pages "9" through "11" of Defs.' Opp'n Memo. of Law].) To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, those reasons).

Although Plaintiff argues that disclosure of the redacted information is necessary to preserve the status quo (a fact disputed by Defendants), Plaintiff fails to focus on whether the requested amendment would further or frustrate the purpose of the original preliminary injunction. *See, supra,* Part II.B. of this Decision and Order (explaining that the relevant test is whether the requested modification would "effectuate[] or thwart[]" the purpose behind the injunction). As the Court indicated above, it did not intend the original preliminary injunction to

require the disclosure of the redacted information in question (about which the parties did not argue, and the Court did not know).  *See, supra,* Part III.A. of this Decision and Order.

This finding is further supported by the fact that Plaintiff's requested amendment does not meet the heightened standard that governed its original motion for a preliminary injunction.  *See, supra,* Part II.B. of this Decision and Order (explaining that, on a motion to amend a preliminary injunction, it is appropriate to consider such factors as whether the movant would suffer irreparable harm in the absence of the amended preliminary injunction).  More specifically, Plaintiff must – but has failed to – show a "clear or substantial" likelihood of success on the merits of its entitlement to the redacted information in question.  *See Disability Rights New York v. N.Y.S. Dep't of Corr. and Cmty. Supervision*, 21-CV-0739, 2022 WL 484368, at *4-5, 7 (N.D.N.Y. Feb. 17, 2022) (Suddaby, C.J.).

Granted, the Court's decision in *Wise* is certainly instructive on the issue of "heavily" redacted records that were requested under the P&A Acts.  *See Wise*, 171 F. Supp.3d at 56-57 (using adjective "heavily" three times to characterized the redacted documents in question, and listing the redacted information as including information regarding the identities of "individuals reporting abuse or neglect to the Justice Center," and the identities of "individuals cooperating in investigations [by the Justice Center]"). However, the Court in *Wise* freely admits that it did not address a circumstance in which the defendant articulated a plausible reason for its discrete redactions.  *Id*. at 59 ("Even if the court were to accept defendants' contention that only the portions of the Justice Center's reports that describe an alleged incident of abuse or neglect must be disclosed, *defendants fail to explain* why a description of such an alleged incident should not include the identity of any individuals involved in, or witness to, the incident. ") (emphasis

9

added).

Here, on the other hand, Defendants have articulated – and often offered at least some admissible record evidence of – *three* reasons for the discrete redactions in question: (1) the need to protect non-client witnesses (who have indicated a desire to remain confidential) from retaliation by convicted felons (and correctional staff) in a confined setting; (2) the need to protect DOCCS itself from liability for any such retaliation; and (3) the need to avoid the chilling effect on future witness compliance with OSI investigations.[5] This last point (regarding a chilling effect) bears emphasis: the Court fails to see how it would further Plaintiff's often-trumpeted "mission" or "mandate" to recklessly risk chilling non-client witnesses from cooperating with OSI investigations (the very source of the information that Plaintiff seeks on its current motion).[6]

Finally, even if these three reasons would have been deemed inadequate under the rationale set forth in *Wise*, this Court has trouble overcoming the fact that the relevant PAIMI regulation uses the word "describe" instead of "identify." *See* 42 C.F.R. § 51.41(c)(2)(iv)

---

[5] (Dkt. No. 40, Attach. 1, at ¶¶ 13-14 [Mousseau Decl., stating, "In the prison context, any perception that an individual may be working with law enforcement may create a significant threat to the individual's life or safety. Such a perception may be created without the disclosure of any substantive information gleaned from a meeting with the individual. For example, the very act of speaking to an investigator – if known by others in the correctional facility – may cause an individual to be labeled as a 'snitch' and targeted for retaliation. . . . For this reason, among others, in the event that OSI could not guarantee absolute confidentiality to potential witnesses, such individuals would be significantly chilled from cooperating with OSI investigations, and OSI's investigative functions would be seriously impaired."].)

[6] *See, supra,* note 5 of this Decision and Order. (*See also* Dkt. No. 40, Attach. 1, at ¶ 6 [Mousseau Decl., stating, "OSI serves a vital function within DOCCS as an independent investigative agency. The independence of OSI's operations permits OSI to operate free from influence by other DOCCS employees, thus allowing for impartiality in its investigative functions"].)

("Information and individual records, whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records, which shall be available to the P&A system under the Act shall include, but not be limited to: . . . Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which *describe* persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings.") (emphasis added). Here, although the Court has not been provided with the unredacted records in question, they presumably indicate that the witnesses in question were male inmates at the relevant correctional facility who were present at the time and place of the events they observed.

Simply stated, to the extent that Plaintiff demands a ruling as a matter of law that the P&A Acts require a blanket disclosure of the names and DINs of non-client confidential OSI witnesses in a prison, Plaintiff has not shown cause for such a ruling. As an alternative, Plaintiff is invited to consider entering a consent decree with DOCCS that (1) requires OSI, whenever it redacts the identifying information of non-client confidential witnesses, to *promptly* ask those witnesses if they consent to the disclosure of their identities to Plaintiff (perhaps through signing a written consent form, unless Plaintiff believes that would chill an affirmative response), and (2) requires Plaintiff, if the witnesses answer affirmatively, to work in *good faith* with OSI to arrange a time and non-public place for Plaintiff to interview those witnesses (perhaps with the personal assistance of an OSI investigator if necessary).[7]

---

[7] Defendants are respectfully reminded that, as the Court indicated in its recent decision in a related action, "the P&A Acts and their regulations, when fairly and reasonably construed in their totality, . . . confer on DOCCS the duty to diligently comply in good faith with

11

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for an order of contempt or, alternatively, for an order amending the Court's prior preliminary injunction (Dkt. No. 39) is **DENIED**.

Dated: January 16, 2024
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

written requests for copies of records . . . ." *Disability Rights New York v. N.Y.S. Dep't of Corr. and Cmty. Supervision*, 18-CV-0980, 2024 WL 21550, at *26 (N.D.N.Y. Jan. 2, 2024) (Suddaby, J.).