UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

DISABILITY RIGHTS NEW YORK,

                         Plaintiff,

v.                                       1:21-CV-0739
                                       (GTS/CFH)

NEW YORK STATE DEP'T OF CORR. AND
CMTY. SUPERVISION; and ANTHONY J.
ANNUCCI, in his official capacity as the Acting
Comm'r of the New York State Dep't of Corr.
and Cmty. Supervision,

                         Defendants.
───────────────────────────────────────────────

APPEARANCES:                       OF COUNSEL:

DISABILITY RIGHTS NEW YORK        BRANDY L. L. TOMLINSON, ESQ.
   Counsel for Plaintiff               CHRISTINA ASBEE, ESQ.
44 Exchange Boulevard, Suite 110      ALYSSA GALEA, ESQ.
Rochester, New York 14614

HON. LETITIA A. JAMES             SHANNAN C. KRASNOKUTSKI, ESQ.
Attorney General for the State of New York  HELENA O. PEDERSON, ESQ.
   Counsel for Defendants            JENNIFER J. CORCORAN, ESQ.
The Capitol                         Assistant Attorneys General
Albany, New York 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this civil rights action filed by Disability Rights New York

("Plaintiff" or "DRNY") against the New York State Department of Corrections and Community

Supervision ("DOCCS") and its Acting Commissioner, Anthony Annucci (collectively,

"Defendants"), is Plaintiff's motion for an order compelling discovery and holding DOCCS in

contempt.   (Dkt. No. 57.)   For the reasons set forth below, Plaintiff's motion is granted in part

and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Relevant Procedural Background

On February 17, 2022, the Court issued a Preliminary Injunction that enjoined Defendants from, among other things, "denying Plaintiff access to all of the above-described requested records for . . . Incarcerated Individual C, in their possession in accordance with Plaintiff's federally mandated P&A authority." (Dkt. No. 28.) On September 16, 2022, following Plaintiff's receipt of those records, Plaintiff moved for an Order of Contempt due to Defendants' redaction of the names and Department Identification Numbers (or "DINs") of two confidential third-party witnesses. (Dkt. No. 39.) On January 17, 2024, the Court denied that motion, because the Preliminary Injunction did not clearly and unambiguously require DOCCS to turn over the withheld information. (Dkt. No. 42, at 4-5.) In addition (and as an alternative to again demanding a ruling as a matter of law that the P&A Acts require a blanket disclosure of the names and DINs of non-client confidential OSI witnesses in a prison), the Court invited Plaintiff to consider entering into a consent decree with DOCCS. (*Id*. at 11.)

On January 29, 2024, the Court re-set the deadline for the filing of dispositive motions as February 16, 2024. (Dkt. No. 43.)[1] Later that day, Plaintiff and Defendants jointly requested "[a]n extension of the discovery deadline" until the end of March 31, 2024, in order "to allow DRNY an opportunity to conduct discovery solely on the security issues that are created if DOCCS turns over unredacted OSI records." (Dkt. No. 44, at 1.) On January 30, 2024, the Court granted that request (defining the scope of that discovery by using the exact language proposed

---

[1]    By this time, discovery had ended, having done so on April 31, 2022. (Dkt. No. 20, at 1-2.)

by the parties). (Dkt. No. 45.) On February 16, 2024, Plaintiff served on Defendants a deposition

notice, document requests, and interrogatories. (Dkt. No. 57, Attach. 2-3.) More specifically,

Plaintiff served the following: (1) a notice of deposition, pursuant to Fed. R. Civ. P. 30(b)(6), of

a person, designated by DOCCS, as being most knowledgeable and prepared to testify on behalf

of DOCCS concerning the relevant subject matter (including DOCCS' policies, procedures,

guidelines, directives, manuals, or other writings, setting forth procedures for responding to

DRNY's P&A requests for OSI, from January 1, 2021, to present); (2) six document requests

pursuant to Fed. R. Civ. P. 26 and 34; and (3) fifteen interrogatories pursuant to Fed. R. Civ. P.

33. (*Id.*)[2]

Defendants did not respond in writing to the deposition notice, document requests and

interrogatories until March 20, 2024 (which presumably was 30 days after they were served with

them). (Dkt. No. 47, Attach. 1.) More specifically, in a letter dated March 20, 2024, Defendants

stated, in pertinent part, that Plaintiff's demands were being "rejected" because they sought

information that was "immaterial to the issues remaining in this case." (*Id.*) In an email message

on March 25, 2024, defense counsel stated to Plaintiff's counsel that, among other things, the

demands requested information that was "well outside the issue of security issues related to

redacting names and DIN's of third party confidential witnesses in OSI actions . . . ." (Dkt. No.

47, Attach. 2, at 2.)

On May 2, 2024, Defendants filed a letter-motion for a discovery conference with U.S.

Magistrate Judge Christian F. Hummel, arguing that all the demands seek information

---

[2]     At this time, it was defense counsel's stated understanding that the purpose of Plaintiff's
eliciting of the above-described information was to further the crafting of the potential consent
decree suggested by the Court. (Dkt. No. 58, at ¶ 7 [Corcoran Decl.]; Dkt. No. 57, Attach. 3, at 3
[email message from defense counsel to Plf.'s counsel dated May 22, 2024].)

"immaterial to the issues remaining in this case" except for a portion of deposition topic number 3 contained in the Notice of Rule 30(b)(6) deposition, "which seeks 'information about DOCCS' security concerns when responding to DRNY's P&A requests for OSI records . . .'" (Dkt. No. 56, at 2 [quoting Dkt. No. 51, at 7]; *see also* Dkt. No. 58, at ¶ 11.) However, at the end of that letter-motion, Defendants stated that "DOCCS is agreeable to preparing a declaration detailing its reasoning and security concerns behind redacting the names and DIN's of confidential third-party witnesses." (Dkt. No. 56, at 2.)

On May 6, 2024, Magistrate Judge Hummel held the requested discovery conference, which did not resolve the parties' dispute. (Text Minute Entry filed May 6, 2024.) As a result, Magistrate Judge Hummel granted Plaintiff leave to file a motion to compel by the end of May 30, 2024. (*Id.*)

On May 9, 2024, Plaintiff proposed via email that Defendants produce the previously referenced declaration from DOCCS detailing the security concerns preventing the production of unredacted OSI records; but Plaintiff also proposed that Defendants agree to a Rule 30(b)(6) deposition and/or written interrogatories, should Plaintiff need additional information beyond that provided in the declaration. (Dkt. No. 57, Attach. 3, at 3.)

On May 22, 2024, Defendants responded to Plaintiff's proposal, asserting that they would not consent to a Rule 30(b)(6) deposition or interrogatories, but would provide a declaration detailing the security concerns preventing the production of unredacted OSI records. (*Id.* at 2-3.) However, later that day, Plaintiff refused to waive its ability to conduct further discovery (in exchange for receipt of the declaration). (*Id.*) As a result, later that day, Defendants chose not to produce the aforementioned declaration (presumably due to the parties' disagreement about further discovery). (*Id.* at 2.)

On May 30, 2024, Plaintiff filed the current motion to compel discovery and hold DOCCS in contempt. (Dkt. No. 57.)

## B.    Summary of Parties' Briefing on Plaintiff's Motion

### 1.    Plaintiff's Memorandum of Law

Generally, in support of its motion, Plaintiff asserts three arguments. (Dkt. No. 57, Attach. 1.) First, Plaintiff argues, generally, broad disclosure of relevant information through discovery is required, and the party resisting discovery bear the burden of showing why the requested discovery should be denied, which here Defendants have failed to do. (*Id*., at 5-6.) In fact, Plaintiff argues, Defendants have failed to respond whatsoever to each discovery request and have instead responded with a blanket rejection of all requests without sufficient explanation. (*Id*. at 7.)

Second, Plaintiff argues, Defendants must produce the requested discovery because the information sought is necessary to support their "affirmative defense" that security concerns prevent the disclosure of the redacted witness information. (*Id.* at 7-9.)

Third, Plaintiff argues, because Defendants failed to produce any discovery whatsoever and did not respond specifically to each of Plaintiff's requests, they defied the Court's Text Order of January 30, 2024, re-opening limited discovery, which imposed on them a duty to respond. (*Id*. at 9.) Thus, Plaintiff argues, the Court should hold Defendants in contempt. (*Id*.)

### 2.    Defendants' Declaration in Opposition

Generally, in opposition to Plaintiff's motion, Defendants assert two arguments. (Dkt. No. 58.) First, Defendants argue, the information requested by Plaintiff is immaterial, because the Court has already ruled that the P&A Acts do not require blanket disclosure of redacted witness information (i.e., the names and DINs of non-client confidential OSI witnesses in a

prison); the Court instead recommended that Plaintiff propose a consent decree. (*Id.* at ¶ 6, ¶ 10.)

Second, Defendants argue, because all of Plaintiff's discovery demands (aside from a portion of one topic in Plaintiff's notice of deposition) were beyond the narrow scope of the Text Order of January 30, 2024—the purpose of which was to elicit information to aid in moving forward with a consent decree—Defendants are not in violation of the Court's Order. (*Id.* at ¶ 13.) Defendants argue that, when they offered to produce the relevant information in a declaration, Plaintiffs refused the offer unless Defendants also agreed to answer interrogatories and submit to deposition requests (which refusal was unreasonable and impermissible under the Court's Text Order of January 30, 2024). (*Id.* at ¶ 12.)

### 3.    Defendants' Supplemental Declaration in Opposition

Generally, in a supplemental declaration by DOCCS Director of Operations of OSI Christian Nunez (which the Court *sua sponte* granted them leave to file), Defendants essentially provide four related reasons as to why security issues prevent the disclosure of the redacted witness information in question. (Dkt. No. 65.)

First, Defendants argue, because incarcerated individuals who cooperate with or provide information to OSI must trust that their identities, and the information they provide, will be held in the strictest confidence, the failure to so hold that information would have a "chilling effect" on OSI's ability to gather information from witnesses and carry out investigations. (*Id.* at ¶ 9.)

Second, Defendants argue, the revelation of the identity of an incarcerated individual who cooperates with OSI, regardless of the content of his statement, can place that individual's life and safety in jeopardy, and specifically may likely cause him to acquire "snitch status," which could result in harm, extortion, retaliation, injury, or even death. (*Id.* at ¶ 10.)

Third, Defendants argue, records of witness statements hold "currency value" in the

prison environment and can be used to craft forged documents toward a variety of ends, including to endanger and extort the individual(s) identified in the records. (*Id.* at ¶ 11.)

Fourth, Defendants argue, the discovery that an incarcerated individual has accused a DOCCS employee of wrongdoing could result in retaliation and/or a chilling effect on future cooperation by incarcerated individuals, thus preventing OSI from carrying out a "full and complete investigation." (*Id.* at ¶ 12.)

### 4.    Plaintiffs' Reply Declaration

Generally, in its reply to Defendants' oppositions, Plaintiff reasserts the arguments made in its memorandum of law-in chief. (*Compare* Dkt. No. 66 *with* Dkt. No. 57, Attach. 1.) To those arguments, it adds the following three arguments: (1) Congress authorized Plaintiff, and the P&A system more broadly, to access unredacted OSI records to carry out investigations, and access to such records is critical to Plaintiff's mission to prevent abuse and neglect of people with disabilities as well as to uncover misconduct; (Dkt. No. 66, at ¶¶ 3-5); (2) Plaintiff is obligated to, and does, ensure strict confidentiality of the records it keeps, and therefore disclosing unredacted information does not pose a security risk (*id.* at ¶¶ 6, 8-12, 18); and (3) prior to this lawsuit, rather than redact witness names from copies of OSI records, DOCCS merely stamped copies of OSI records "confidential" and either "Attorney Viewing Only" or "Attorney Eyes Only," but DOCCS has provided no information as to when or why it has changed its redaction policy, whether it provides unredacted OSI records to other agencies or organizations, or what specific security concerns justify redaction in this case (*id.* at ¶¶ 12-14, 16).

### 5.    Defendants' Sur-Reply Letter-Brief

Generally, in their sur-reply to Plaintiff's reply (which, again, the Court *sua sponte* granted them leave to file), in addition to asserting arguments previously asserted, Defendants

respond to the third argument asserted by Plaintiff in its reply (regarding DOCCS' failure to explain its apparent change in policy) by stating as follows: (1) the OSI records referenced by Plaintiff regard two different investigations, both occurring in 2014; (2) in the first investigation (regarding Incarcerated Individual Benitez), there are not only no confidential third-party OSI witnesses but there are no third-party witnesses at all; (3) in the second investigation (regarding Incarcerated Individual Tillman), although there is a mention of an Incarcerated Individual Clark, he was not a confidential OSI witness (but merely the person in the cell next to Mr. Tillman); (4) in any event, upon further deliberation, DOCCS' opinion is that Mr. Clark's name and DIN should have been redacted but was merely inadvertently not done; and (5) as a result, neither of the matters cited by Plaintiff evidence a change in policy. (Dkt. No. 72.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Motion to Compel Discovery

Once a party has conferred, or attempted to confer, in good faith "with the person or party failing to make disclosure or discovery in an effort to obtain it without court action[,]" they may, "[o]n notice to the other part[y] . . . move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "Motions to compel made pursuant to Rule 37 are 'entrusted to the sound discretion of the district court.'" *Harris v. Bronx Parent Hous. Network, Inc.*, 18-CV-11681, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). "The party seeking discovery bears the initial burden of proving the discovery is relevant[.]" *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp.3d 124, 139 (S.D.N.Y. 2017)

(citing *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. Of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012)). "The relevance standard is construed broadly to 'encompass any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case.'" *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 09-CV-0835, 2012 WL 12896163, at *2 (N.D.N.Y. Dec. 21, 2012) (Dancks, M.J.) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 [1978]).

"Information is relevant if it: '(a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Cohen v. Altman*, 19-CV-6101432 (TJM/TWD), 2021 WL 6106432, at *1 (N.D.N.Y. June 4, 2021) (quoting Fed. R. Evid. 401). "The party seeking discovery must show that it is not engaging in merely a fishing expedition." *Gilead Scis., Inc. v. Safe Chain Sols. LLC,* 345 F.R.D. 12, 20 (E.D.N.Y. 2023) (quoting *Holloway v. City of New York*, 21-CV-3858, 2023 WL 6614559, at *8 (E.D.N.Y. Sept. 28, 2023)). "Once any possibility of relevance sufficient to warrant discovery is shown, the burden shifts to the party opposing discovery to show the discovery is improper." *Condit v. Dunne*, 225 F.R.D. 100,106 (S.D.N.Y. 2004) (citation and internal quotations omitted).

"Although broad, discovery is obviously not limitless. . . ." *Fears v. Wilhelmina Model Agency, Inc.*, 02-CV-4911, 2004 WL 719185 (S.D.N.Y. Apr. 1, 2004). "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008)). This includes "broad discretion to limit discovery in a prudential and proportionate way." *EM Ltd.* 695 F.3d at 207 (citing Fed. R. Civ. P. 26(b)(2)).

**B.    Motion for Civil Contempt**

Civil contempt is a "potent weapon, to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (citations and quotation marks omitted). Though the power to hold a party in contempt is within a district court's discretion, that power is narrowly circumscribed. *Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2d Cir. 2003) (citations omitted). "A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989). "[T]he court must not lightly invoke it's contempt power." *In re Att'y General of U.S.*, 596 U.S. F.2d 58, 65 (2d Cir. 1979).

## III.    ANALYSIS

### A.    Motion to Compel Discovery

Generally, Plaintiff argues that its discovery requests are relevant to Defendants' "affirmative defense" of the ongoing security concerns that would result from the unconditioned[3] disclosure of the names and DINS of confidential third-party inmate witnesses in OSI records. (Dkt. No. 55, Attach. 1, at 11.) Formally, Defendants have asserted no such affirmative defense.

---

[3]    The Court notes that the issue before it does not regard Plaintiff's right to freely access the names and DINS of confidential third-party inmate witnesses in question. Rather, the issue regards Plaintiff's right to do so after agreeing to cooperate with OSI in arranging a confidential meeting between Plaintiff and those witnesses. (*See, e.g.,* Dkt. No. 42, at 6 [characterizing the issue as Plaintiff's demand for the information from DOCCS "with no advance accounting of how the information provided will be used"], 7 n.4 [characterizing the issue as Plaintiff's "insisting on its right 'to interview any witness' instead of cooperating with OSI"], 11 [finding that Plaintiff has not shown cause for a "ruling as a matter of law that the P&A Acts require a blanket disclosure of the names and DINs of non-client confidential OSI witnesses in a prison"].)

(*See generally* Dkt. No. 16, at ¶¶ 22-32 [Answer & Affirm. Defenses, not including any affirmative defense of ongoing security concerns producing to DRNY unredacted OSI records].) In any event, even if the Court were to treat this ground for resisting the unconditioned disclosure of the information in question as an "affirmative defense," Plaintiff's discovery requests would still have to remain within the *limited* scope of reopened discovery permitted by the Court in its Text Order of January 30, 2024: the discovery requests must regard "solely . . . the security issues that are created if DOCCS turns over [the] unredacted OSI records [in question]." (Dkt. No. 45.) By and large, they do not do so.

Having said that, the overbreadth of most of Plaintiff's discovery requests does not confer on Defendants the license to inadequately respond to Plaintiff's discovery requests. Rather than respond to each request with any sort of specificity, Defendants have responded with a blanket objection that all of the requests are "immaterial." (Dkt. No. 47, Attach. 1, at 2-3.) As a United States magistrate judge from the Southern District of New York has explained,

> "[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents and answer[ing] no interrogatories ... are a paradigm of discovery abuse." *Jacoby v. Hartford Life & Accident Ins. Co.,* 254 F.R.D. 477, 478 (S.D.N.Y. 2009). A party resisting discovery has the burden of showing "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive . . . by submitting affidavits or offering evidence revealing the nature of the burden." *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y. 1984) (citation omitted).

*Pegoraro v. Marrero*, 281 F.R.D. 122, 128-129 (S.D.N.Y. 2012); *see also* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. . ."); Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must either state that

inspection and related activities will be permitted as expected or state with specificity the grounds for objecting to that request, including the reasons."). The fact that Defendants have conceded that a "portion of the Demands . . . relates to th[e] narrow issue set forth in the Text Order" only reinforces the Court's finding that Defendants should have taken the pains to respond to each of Plaintiff's requests with specificity. (Dkt. No. 56, at 2; Dkt. No. 58, at ¶ 11.)[4]

In any event, in the interest of thoroughness, the Court will apply Defendants' general objection (that Plaintiff's requests for discovery were "immaterial" or beyond the scope of the Court's Text Order of January 30, 2024) to each request for documents, interrogatories, and deposition topics submitted by Plaintiff.

### 1.    Document Requests

With respect to Document Request Nos. 1 and 2, Defendants' objection is sustained, because Plaintiff's requests for "any and all correspondence between DOCCS staff, and between and from DOCCS staff" concerning Plaintiff's request for access to "OSI requested records" in copy format or unredacted format is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect to Document Request Nos. 3 and 4, Defendants' objection is sustained, because Plaintiff's requests for "any and all DOCCS OSI protocols, policies, and/or directives . . . regarding or instructing DOCCS' staff to respond to [Plaintiff's] P&A Act requests

---

[4]    The Court notes that, frustratingly, Defendants did not submit to that narrow portion of the demands that Defendants have deemed to be relevant (specifically, the deposition topic regarding "Information about DOCCS' security concerns when responding to DRNY's P&A request for OSI records . . ."). (Dkt. No. 56, at 2; Dkt. No. 58, at ¶¶ 11-12.)

for copies of OSI records and to view OSI records in person" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect to Document Request Nos. 4 and 5, Defendants' objection is sustained, because Plaintiff's requests for "any and all DOCCS OSI protocols, policies, and/or directives . . . regarding redaction of OSI records that have been requested by [Plaintiff]" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

### 2.    Interrogatories

With respect Interrogatory No. 1, Defendants' objection is sustained, because Plaintiff's request for all information regarding "[w]here . . . OSI . . . keep[s] and/or maintain[s] records during a pending investigation" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 2, Defendants' objection is sustained, because Plaintiff's request for all information regarding "[w]here . . . OSI . . . keep[s] and/or maintain[s] records after completion or closure of an OSI investigation" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn

over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 3, Defendants' objection is sustained, because Plaintiff's request for all information regarding "the protocol . . . OSI follows when responding to requests made by [Plaintiff] pursuant to the P&A Acts for copies of records during a pending OSI investigation" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 4, Defendants' objection is sustained, because Plaintiff's request for all information regarding "the protocol . . . OSI follows when responding to P&A requests made by [Plaintiff] pursuant to the P&A Acts to physically inspect OSI records at the facility/designated location(s) where the records are located or available during a pending OSI investigation" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 5, Defendants' objection is sustained, because Plaintiff's request for all information regarding "the protocol . . . OSI follows when responding to requests made by [Plaintiff] pursuant to the P&A Acts for copies of records of a concluded and/or closed OSI investigation" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question

14

(which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 6, Defendants' objection is sustained, because Plaintiff's request for all information regarding "the protocol . . . OSI follows when responding to P&A requests made by [Plaintiff] pursuant to the P&A Acts to physically inspect OSI records at the facility/designated location(s) where the records are located or available of a concluded and/or closed OSI investigation" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 7, Defendants' objection is sustained, because Plaintiff's request for all information regarding whether "DOCCS staff working on pending OSI investigations operate under a policy or protocol to redact specific information within records responsive to DRNY's requests" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 8, Defendants' objection is sustained, because Plaintiff's request for all information regarding whether "OSI investigators wear clothes, badges, and/or other indicators that would or could identify them as OSI investigators" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 9, Defendants' objection is sustained, because Plaintiff's request for all information regarding whether "OSI investigators interview witnesses in-person at DOCCS' correctional facilities" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 10, Defendants' objection is sustained, because Plaintiff's request for all information regarding "how OSI investigators maintain security through their witness interviews and investigatory tasks when managing and/or conducting OSI investigations" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 11, Defendants' objection is sustained, because Plaintiff's request for all information regarding "[h]ow many DOCCS correctional facilities maintain dedicated space to conduct OSI business, including but not limited to offices, private meeting rooms, and conference rooms" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 12, Defendants' objection is sustained, because Plaintiff's request for all information regarding "[h]ow many OSI area offices . . . DOCCS maintain[s] and/or oversee[s]" is overly broad and burdensome, and would elicit information not relevant to

the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 13, Defendants' objection is sustained, because Plaintiff's request for all information regarding the "list [of] all state or federal agency and/or organizations that have clearance, permission, or a legal right to view records related to OSI investigations" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 14, Defendants' objection is sustained, because Plaintiff's request for all information regarding whether "DOCCS provide[s] unredacted records created, maintained, and/or stored as part of an OSI investigation to any state or federal agency, or oversight organization as a requirement or upon request" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Interrogatory No. 15, Defendants' objection is sustained, because Plaintiff's request for all information regarding whether "DOCCS provide[s] unredacted records created, maintained, and/or stored as part of an OSI investigation to other departments and/or offices or staff within DOCCS who work outside of the DOCCS' OSI" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS

were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

###    3.    Deposition Topics

With respect Deposition Topic No. 1, Defendants' objection is sustained, because Plaintiff's request for all information regarding DOCCS' "policies, procedures, guidelines, directives, manuals or other writings, setting forth procedures for responding to [Plaintiff's] P&A requests for OSI records and [DOCCS'] recordkeeping process" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Deposition Topic No. 2, Defendants' objection is sustained, because Plaintiff's request for all information regarding "DOCCS staff responsible for creating [DOCCS'] policies, procedures, guidelines, directives, manuals or other writings, setting forth procedures for responding to [Plaintiff's] P&A requests for OSI records and [DOCCS'] recordkeeping process" is overly broad and burdensome, and would elicit information not relevant to the security issues that would be created if DOCCS were to turn over to Plaintiff the unredacted names and DINs of the two confidential third-party witnesses in the OSI records in question (which is the sole subject of inquiry during this discovery extension).

With respect Deposition Topic No. 3, any objection by Defendants is overruled, because Defendants have twice conceded the relevance of Plaintiff's request for all information regarding "DOCCS' security concerns when responding to [Plaintiff's] P&A requests for OSI records and

[DOCCS'] recordkeeping process." (Dkt. No. 56, at 2 [conceding that this "portion of the Demands . . . relates to th[e] narrow issue set forth in the Text Order"], *accord*, Dkt. No. 58, at ¶ 11.) Specifically, Defendants have twice explained that "[q]uestions related to that specific issue would elicit information regarding DOCCS' reasoning for redacting names and DIN's of confidential third-party witnesses in OSI investigations, which was the stated purpose of the requested additional discovery by Plaintiff." (*Id.*)

For similar reasons, the Court overrules any objection by Defendants to Deposition Topic No. 4 (requesting "[i]nformation available prior to DRNY's filing of the instant litigation, between January 11, 2021 and June 28, 2021, about DOCCS' security concerns related to the P&A request made by DRNY on January 11, 2021 for OSI records related to Individual C") or Deposition Topic 5 (requesting "[i]nformation available after DRNY's filing of the instant litigation, between June 29, 2021 to present, about DOCCS' security concerns related to the P&A request made by DRNY on January 11, 2021 for OSI records related to Individual C"). Although these lines of inquiry appear to test a *perceived* change in policy that the Court finds Defendants have adequately explained (in their sur-reply letter-brief),[5] the Court finds the lines of inquiry permissible to the extent they focus the inquiry presented in Deposition Topic 3 on OSI records related specifically to Individual C.

### B.    Motion for Civil Contempt

Applying the three-pronged test stated above in Part II.B. of this Decision and Order

---

[5]    The Court notes that, after reading Defendants' sur-reply letter-brief, it reaffirms its prior conclusion "that, if in the past DOCCS has indeed provided unredacted copies of OSI records to Plaintiff, then either (1) those copies did not include information identifying non-client witnesses or (2) the disclosure was unintentional." (Dkt. No. 42, at 7, n.3.)

presents a close call that is ultimately made in Plaintiff's favor. With regard to the first prong, the

Court finds that Court's Text Order of January 30, 2024, clearly and unambiguously permitted

Plaintiff to conduct discovery regarding "the security issues that are created if DOCCS turns over

[the] unredacted OSI records [in question]." (Dkt. No. 45.) With regard to the second prong, the

Court finds that the proof of Defendants' noncompliance with that Text Order is clear and

convincing with respect to Deposition Topic Nos. 3, 4, and 5. *See, supra,* Part III.A.3. of this

Decision and Order. With regard to the third prong, the Court finds that Defendants have not

diligently attempted in a reasonable manner to comply with Plaintiff's deposition requests with

respect to these three topics.

Specifically, with regard to this third prong, the Court notes that, frustratingly,

Defendants did not submit to a deposition regarding the topics that they deemed to be relevant.

(Dkt. No. 56, at 2; Dkt. No. 58, at ¶¶ 11-12.) The fact that Plaintiff refused to waive its ability to

conduct further discovery in exchange for its receipt of a declaration from Defendants (detailing

the security concerns preventing the production of unredacted OSI records) does not excuse

Defendants from submitting to the deposition topics in question (especially given that

Defendants did not produce the aforementioned declaration until later prompted to do so by the

Court). (Dkt. No. 57, Attach. 3, at 2-3.)[6]

_____

[6]     The Court notes that, although it agrees that the three-and-a-half page double-spaced
declaration of Christian Nunez eventually provided by Defendants certainly sheds some light on
the three deposition topics in question, it does not do so with complete satisfaction, e.g., by
providing further details and/or examples of the four related reasons offered: the "chilling effect"
created, "snitch status" conferred, "currency value" held, and lack of "full and complete
investigation[s]" conducted. (Dkt. No. 65; *see also* Dkt. No. 40, Attach. 1, at ¶¶ 13-14 [Decl. of
DOCCS Deputy Chief Investigator Shawn Mousseau, stating, "In the prison context, any
perception that an individual may be working with law enforcement may create a significant
threat to the individual's life or safety. Such a perception may be created without the disclosure
of any substantive information gleaned from a meeting with the individual. For example, the

With regard to the nature of the sanction imposed, the Court finds that, although attorney's fees and costs are not appropriate, the Court finds it appropriate to require Defendants, within thirty (30) days of the entry of this Decision and Order, to do the following three things: (1) comply with Plaintiff's deposition request with regard to Deposition Topics 3, 4, and 5;[7] (2) prepare and send to Plaintiff, for its consideration and editing, a confidentiality agreement;[8] and (3) prepare and send to Plaintiff, for its consideration and editing, a consent form (to be given to

---

very act of speaking to an investigator – if known by others in the correctional facility – may cause an individual to be labeled as a 'snitch' and targeted for retaliation. . . . For this reason, among others, in the event that OSI could not guarantee absolute confidentiality to potential witnesses, such individuals would be significantly chilled from cooperating with OSI investigations, and OSI's investigative functions would be seriously impaired."].)

[7]     The Court notes that, while it certainly understands Plaintiff's desire to test the legitimacy of DOCCS' policy before entering into a consent decree, the Court in no way tied the continuation of limited discovery to Plaintiff's consideration of such a consent decree. (*Compare* Dkt. No. 58, at 2, ¶ 7 [Corcoran Decl., stating, "It was Defendants' understanding at the time that the purpose of [Plaintiff's] eliciting that information was in furtherance of the potential consent decree contemplated by the Court."] *with* Dkt. No. 42, at 11-12 [Decision and Order of Jan. 17, 2024, not making such a connection] *and* Dkt. No. 45 [Text Order filed Jan. 30, 2024, granting "an extension of the discovery deadline to allow DRNY an opportunity to conduct discovery solely on the security issues that are created if DOCCS turns over unredacted OSI records"].) To the contrary, the Court imagines that Plaintiff's openness to such a consent decree (which would *preserve* an inmate's incentive to serve as a witness) would be in accordance with Plaintiff's "federal statutory duty to . . . investigate allegations of abuse and neglect." (Dkt. No. 6, Attach. 2, at 8 [attaching page "9" of Plf.'s Memo. of Law in support of its motion for a preliminary injunction, citing 42 U.S.C. §§ 15043(a)(2), 15043(c), 10805(a), 10806(b), 42 C.F.R. § 51.41, and 45 C.F.R. § 1326.25].)

[8]     Although the Court of course defers to the parties with regard to the wording of this confidentiality agreement, the Court respectfully suggests that the confidentiality agreement contain the following: (a) an agreement that Plaintiff will keep the names, DINs, and witness statements of the inmate witnesses in question absolutely confidential in accordance with federal and state law; (b) an agreement that Plaintiff will not contact the inmate witnesses in question except through OSI; (c) an agreement that Plaintiff will not contact the inmate witnesses in question if they have declined in writing to receive a visit from Plaintiff; and (d) a signature line for Plaintiff.

the two non-client confidential OSI inmate witnesses in question).[9] Defendants are, after all, the ones who know the precise protocol required to maintain security during, and following, the disclosure of the names and DINs in question. Finally, taking such steps would be a manifestation of the "good faith" and "diligen[ce]" that Defendants are duty bound to exhibit under the P&A Acts. (Dkt. No. 42, at 11-12, n.7.)[10]

      **ACCORDINGLY**, it is

      **ORDERED** that Plaintiff's motion for an order compelling discovery and holding DOCCS in contempt (Dkt. No. 57) is <u>**GRANTED** in part</u> and <u>**DENIED** in part</u> in the following regards:

---

[9]     Although the Court of course defers to the parties with regard to the wording of this consent form, the Court respectfully suggests that the consent form contain the following: (a) a notice that, because the inmate has previously served as a confidential witness in an OSI investigation, the OSI is obligated under the law to disclose to Plaintiff the inmate witness's name, DIN, and witness statements; (b) an assurance that Plaintiff is obligated under the law to keep, and will keep, the inmate's name, DIN, and witness statements absolutely confidential, and will not contact the inmate except through OSI; (c) a statement that Plaintiff is requesting to visit the inmate confidentially in a non-public area of a correctional facility at a place and time to be coordinated by OSI; (d) an assurance that both OSI and Plaintiff will keep the visit absolutely confidential; and (e) a signature line indicating whether the inmate consents to, or declines, the visit.

[10]    The Court notes that, although it certainly "invited" Plaintiff to consider entering into a consent decree with DOCCS (as "[a]s an alternative [to demanding a ruling as a matter of law that the P&A Acts require a blanket disclosure of the names and DINs of non-client confidential OSI witnesses in a prison]," *see* Dkt. No. 42, at 11), the Court never intended to suggest that it was Plaintiff, and not Defendants, who should propose the terms of a consent decree. (*Compare* Dkt. No. 47, Attach. 2, at 2 [attaching email from defense counsel stating, "What the Court did recommend is that you propose a potential consent order regarding asking these types of witnesses if they consent to disclosure of their identifying information. You have not done so."] *and* Dkt. No. 58, at 2, ¶ 6 [Corcoran Decl., stating, "The Court then went on only to recommend that Plaintiff consider proposing a consent decree, the parameters of which are detailed in the Decision."] *with* Dkt. No. 42, at 11 [Decision and Order of Jan. 17, 2024, using words "consider entering [into]" and not "propose"] *and id*. at 11-12, n.7 [respectfully reminding Defendants of DOCCS "duty to diligently comply in good faith with written requests for copies of records . . ."].)

(1) the motions are **<u>GRANTED</u>** as to Deposition Topic Nos. 3, 4, and 5;

(2) within **THIRTY (30) DAYS** of the entry of this Decision and Order, Defendants

shall file a status report advising the Court that they have (a) complied with

Plaintiff's deposition request with regard to Deposition Topics 3, 4, and 5, (b)

prepared and sent to Plaintiff, for its consideration and editing, a confidentiality

agreement (as described above in note 9 of this Decision and Order), and (c)

prepared and sent to Plaintiff, for its consideration and editing, a consent form (as

described above in note 10 of this Decision and Order); and

(3) the motions are **<u>DENIED</u>** in all other respects.

Dated: September 8, 2025
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge